Tbe plaintiff is now deceased, and the canse has been revived in the name of his successor as Bishop of the Roman Catholic *694 Church in and for the Diocese of Columbus. By virtue of his appointment as such bishop, and under the laws' of said church, all the property of the Roman Catholic Church in said diocese, except such as is vested in certain incorporated societies, is held by him in his own name in trust for the sole use of the said church.
The question presented by the record is, whether certain real estate held and used by the plaintiff as such bishop and trustee, for the purposes of said church, but not for profit, is exempt from taxation under the Constitution and laws of Ohio.
Plaintiff by his petition seeks to enjoin the defendant, as auditor of this county, from assessing and levying any amounts as taxes on the real estate described in the petition, and to enjoin the treasurer of said county from demanding or collecting from plaintiff the amounts of taxes levied thereon, and for an order directing said officers to correct the tax lists and duplicates, by striking therefrom the several amounts assessed against said real estate.
Said petitioner claims: That the only purpose of acquiring and holding real estate in such manner is to erect and permanently establish thereon houses used exclusively for public worship, with offices and dormitories and places of instruction, and the distribution of public charity, used in connection with and a part of such house of public worship, and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same; to establish public institutions of learning, with the lands connected therewith, and necessary for the proper occupancy, use and enjoyment of the same, to erect and establish other buildings belonging to institutions of purely public charity, and to be used for purely public charitable purposes in connection with said other buildings, with the lands occupied by such institutions; and to establish and maintain graveyards' or burying grounds. Said property is classified as church buildings used exclusively for public worship; school-buildings as public institutions of learning, and belonging to institutions of purely public charity; other buildings belonging to and a part of said church and school buildings and necessary thereto, and belonging to institutions of purely public charity; *695 that none of said houses or lands are. leased or otherwise used with a view to profit, and no profit is or has been derived therefrom. It is also claimed that said Roman Catholic Church is an institution of purely public charity; that all of said schools are open for the admission of children of parents of all denominations, and the instruction afforded them is substantially gratuitous, no compensation being enacted, and 'no conditions imposed, except those of good behavior and the observance of the rules of discipline of the school. Small contributions of twenty-five or fifty cents per month are expected from parents who are able to contribute, but the aggregate amount of these contributions is small; that the schools are substantially supported out of the revenues of the church, and are not carried on with a view to profit; that the number of children attending said schools in Columbus average about three thousand. That the'public at large is freely admitted to all said places and buildings without distinction or discrimination.
That the priests of said church are celibates and the houses wherein they lodge are not the residences of families, but are the. public places where they freely and gratuitously teach and do teach many persons in the knowledge of the doctrine and principles of the religion of said Catholic Church; where alms ■are given to the poor and needy; where family or neighborhood disputes are settled; where charitable, temperance and other worthy societies are originated, organized, fostered and directed.
That said houses are also the public offices or places where the ministers are expected to be called upon at any hour of the day or night by all who may be in distress or requiring their ministerial or other charitable services, to which said ministers are bound to respond by their vows and the rules of the church; that they hold themselves ready, and to respond willingly to all such calls free of charge.
That such buildings are also used as places where other affairs of the parish are' conducted, and accounts kept; that baptisms, marriages and burials are ther.e conducted, pew rents paid and that they are houses of and belonging to institutions of purely public charity and learning; that all of said real *696 estate was donated or paid for by voluntary contributions and offerings of the members of said church, and others interested in said religious, educational and charitable purposes of said church.
That in the year 1890, all or nearly all of said real estate was duly entered and valued by the district assessors as required by Revised Statutes, 2799, and the same was duly entered on a separate list or duplicate as exempt from taxation, and the same was duly exempted by the predecessor in office of said defendant, and by said defendant from October, 1894, until 1896, when a large portion of the same was entered upon the tax duplicates of said county and taxes and penalties charged against the same as far back as the decennial appraisement of 1890.
The property described in the petition contains some thirteen separate parcels, located in different sections of the city of Columbus. It is not claimed that any portion of the premises occupied by the church proper and its appurtenances is sought to be taxed, and such is placed on the tax duplicate as exempt property.
The same is true of property used in part as parochial schools and in part as a church, and such is marked on the duplicate as exempt property, and all parts of premises used for parochial schools, and for academical purposes and for 'the cathedral, are exempt.
It being conceded that certain lands described in the petition are not sought to be taxed, and are exempt, I shall, therefore, not discuss the question of taxing any lands occupied by houses used exclusively for public worship, nor the grounds appurtenant thereto, nor public parochial school houses and buildings, nor grounds appurtenant thereto. But it is contended that priests’ houses, the bishop’s house, and the lots on which they are erected, lots occupied by houses used as places of domicile for the sisters or lay teachers for the parochial schools, vacant lots, and lots covered by buildings occupied by tenants, and the old Catholic graveyard, are not exempt, and that such should be taxed.
*697 The defendant by his cross-petition also seeks to recover from the plaintiff certain special assessments for the improvement of streets on which certain property described in the petition abuts, all of which is controverted by the reply.
The case is submitted to the court on exceptions by both plaintiff and defendants to the findings of the master.
The evidence in the ease, as well as the briefs of counsel, are voluminous, and I have spent a long time in reading and digesting the evidence, the arguments and the authorities. It' will not be possible for me to embody in the opinion more than-a conclusion as to that part of the evidence and argument necessary to advert to, and to refer to such authorities as, in my opinion, control in determining the questions of law. As to the findings of fact by the master, in most of which I concur, I shall first direct attention to and discuss what I regard as the most essential and controlling question presented by the record, and that is: The Roman Catholic Church as an institution of purely public charity.
The master found that said church is an institution which has for its chief and primary object and purpose the teaching and extending of its recognized form of religious belief and worship into all parts of the world. Charity is included in its teachings, purpose and practice, but rather as an incident than as its primary and essential purpose. For this reason he finds and concludes that, under the authorities, said church is not an institution of purely public charity. Upon a determination of this question will depend largely the issues here made by the record
The evidence shows, and the master so finds, that the bishop and priests of the church are celibates, and under the vows of their ordination, their entire lives and labors are devoted^to teaching and preaching the gospel; administering the sacraments; devoting themselves to the service of God and their fellowmen and to works of purely public charity; to organizing religious congregations and benevolent, charitable and temperance societies, and to building churches, schools, asylums and hospitals and sustaining them.
*698 The duties of the priest are multifarious. Tie administers all the affairs of the church, both spiritual and temporal, and has charge of the schools and institutions within his parish. At the church edifice he is required to go • every morning to administer the sacraments. He conducts services in the church every Sunday and on holidays, sometimes lasting all day. He must respond at all hours of the day and night to calls from the sick, those in distress or desiring to make confessions. He solemnizes marriages and conducts religious exercises at baptisms and burials. Many of these duties are performed by the priest at the place of his residence, known as the priest’s house. He there keeps the books of account of the financial transactions of his parish, records of marriages, baptisms, interments and confirmations. His house is used as a place of instruction for converts and children preparing for their first communion. Confessions are sometimes heard there, also the total abstinence pledge is there administered, as well as marriage ceremonies there performed. The bishop and the priests lodge in what are called priests’ houses, which are in close proximity to their churches.
The evidence shows that in these priests’ houses, in addition to the other uses to which they are put, charitable donations are there received, and are distributed from these houses by the priests to the worthy poor, regardless of their religious belief,' their race, and without discrimination. None of the buildings, including said priests’ houses, are rented or in any respect used for profit, and no profit whatever is derived from them. The priests reside in said houses, for the reason, it is claimed, that their constant presence is required there day and night.
Does the fact that said church has for its chief and primary object the teaching and extending of its recognized religious belief and worship deprive it of equal privileges that in law are accorded institutions that are exclusively devoted to public charity? In other words, is an institution, one whose missions is the indiscriminate dispensing of public charity, and whose buildings are devoted to that purpose, to be deprived of equal *699 privileges of other charitable institutions, because it has in addition to public charity, another mission, which may be a primary one, of the teaching and dissemination of its religious beliefs? Section 2, Article XII, of the Constitution of Ohio provides:
“Laws shall be passed, taxing by a uniform rule, * * * all real and personal property, according to its true value in money; but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, * * * may, by general laws, be exempted from taxation,” etc.
Section 2732, Revised Statutes, prpvides that the following property shall be exempt from taxation:
“1. All public school houses, and houses used exclusively for public worship, the books and furniture therein, and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same and not leased or' otherwise used with a view to profit; all public colleges, public academies, all buildings connected with the same, and all lands connected with public institutions of learning, not used with the view to profit.”
2. All lands used exclusively as graveyards, except by persons or companies for profit.
3. The sixth paragraph of the act provides as exempt property: “All buildings belonging to institutions of purely public charity.”
The master holds that because the chief or primary object of this church is the teaching of religious beliéf, that, although charity is included in its teachings, purpose and practice, it is but an incident, and hence it is not an institution purely of public charity.
Among other authorities, he relies principally upon Donohugh’s Appeal, 86 Pa. St., 306.
From the fact that the library association in that case had no object other than that alone of dispensing knowledge through the free circulation of its books to the public indiscriminately, this question was neither made nor decided in that case. The question there before the court was whether institutions of *700 purely public charity were not, under the legislative act, limited to those solely controlled and administered by the state, or, whether they extended to private institutions for purposes of purely public charity and not administered for private gain.
On the question of what constitutes an institution of “purely public charity,” the case is instructive.
In Donohugh’s Appeal, supra, the court holds in the syllabus:
“Purely public charity within the meaning of Section 1, Article IX, of the Constitution, which provides that the Legislature may exempt from taxation ‘institutions of purely public charity,’ is not necessarily one solely controlled and administered by the state, but extends to private institutions for purposes of purely public charity and not administered for private gain. ’ ’
The third clause of the syllabus provides:
“The ordinary features of a public use are, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted equality that gives it its public character.”
The fourth clause of the syllabus provides:
“The act of May 14, 1874, -providing that all hospitals, universities and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy of the same, founded and endowed or maintained by public or private charity, shall be exempted from taxation, is constitutional and the Library Company of Philadelphia is clearly within the exemption therein provided.”
The court say:
“The essential feature of a public use is, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted equality that gives it its public character. The smallest street in the smallest village is a public highway of the commonwealth, and none the less so because a vast majority of the citizens will certainly never derive any benefits from its use. It is enough that they may do so if they choose. So there is no charity conceivable which will not, in its practical operation, exclude a large part of mankind, and there are few which do not do so in express *701 terms, or by their restrictive force of the description of the persons for whose benefit they are intended.”
The court further say:
“Next and last we have to consider the force to be given to the word ‘purely,’ in the constitutional phrase, ‘purely public charity.’ In this connection, and in its ordinary sense, - the word ‘purely’ means completely, entirely, unqualifiedly, and this is the meaning we must presume the people to have intending in adopting it in their Constitution. Plainly then the charities authorized to be exempted are those that are completely and entirely public. The phrase is intended to exclude those charities which are private or only quasi public, such as many religious aid societies, and also those which, though public to some extent or for some purposes, have, like Masonic lodges and similar charities, some mixture of private with their public character. The true test is to be found in the objects of the institution. Are they entirely for the accomplishment of the public purpose, or have they some intermixture of private or individual gain? We get a clear and strong light on this subject from the words of the same clause of the Constitution descriptive of burial places which may be exempted, to-wit, those ‘not used or held for private or corporate profit.’ Such places are unquestionably public charities, and the specification of them might have been omitted without impairing the force of the provision. But, as we have seen, the exemption of cemeteries had been recently abused by including some that were wholly for private profit, and the Constitution was made to emphasize its prohibition of such acts by specifically naming those burial places which alone might be exempted. Having done this, it passed on to name concisely and collectively all other institutions of purely public charity. The phrase might have been expressed, ‘places of burial and other institutions of public charity, not for private or corporate profit.’ The language used, taken as a consistent and consecutive whole, shows that this is its plain meaning.”
The Supreme Court in reviewing the opinion of the learned judge of the court of common pleas, the trial judge in that case, held that his opinion was so full, clear and accurate that they deemed it unnecessary to add anything to what he has said so well. The court in the opinion further said:
“One point, perhaps, we should notice. The word ‘purely’ must be interpreted so as to confine its qualification of a ‘ public *702 charity’ to those institutions solely controlled and administered by the state herself, or so as to extend it to private institutions for purpose of purely public charity, and not administered for private gain. We prefer the latter interpretation, as declaring the true meaning of the Constitution, and subserving best the public interest. On this point in its application to the library company, the opinion of the learned judge fully sustains the claim of the company to be an institution of this character.”
It is therefore apparent that the word “purely,” in the constitutional phrase, “purely public charity,” as used and defined in Donohugh’s Appeal, supra, is not intended in its definition to qualify the institution that administers the charity, but is intended to qualify the charity. If the charity is completely, unqualifiedly and entirely for the accomplishment of the public purpose, as distinguished from private or individual gain, then it is purely public charity. A church or society that limits its charity to its own members would not be “purely public,” and could not come within the definition of such an institution. But if it appears that its object is in fact charitable, and that no profit, reward or remuneration can be derived from it by its members or directors, and that its dispensation of charity is public, and not limited or confined to any class of persons, then it is a purely public charity within the definition of the above cited ease.
Later cases decided in Pennsylvania more explicitly decide to what such institutions extend. In Woman’s Some Missionary Soc. v. Taylor, 173 Pa. St., 456 (34 Atl. Rep., 42), the court say:
“Exemptions under the Pennsylvania Constitution and laws of institutions of purely public charity extend to premises of a' missionary society whose objects are the relief of the suffering poor from destitution and their education in temporal and religious matters — the premises being used as a place of residence for the deaconesses who are the agents of the charity, and who perform their duties without any compensation or pension other than their residence therein; as a place where gifts consisting of food, clothing and money to aid the charitable labors of the corporation are received and stored, and from which they are distributed; as a place of free instruction for *703 certain classes of children of both sexes; as a place where books are kept for the nse of those for whom the charitable offices are conducted; as a lunch restaurant where light meals are sold to poor working girls at a rate less than the cost of furnishing; and as a place of daily worship which is thoroughly nonsectarian in its character though the institution is on a Methodist foundation, no objects of private or corporate gain being contemplated or attained by the work.”
In Methodist Episcopal Church v. Emton, 92 Tenn., 188 (21 S. W. Rep., 321), held:
“That the book agents of the Methodist Episcopal Church, South, a corporation created as an arm or agency of the Methodist church, a religious organization and charged with the trust of manufacturing and distributing books, periodicals, etc., in the interest and under the auspices of that church, and thereby raising a fund with which to support its worn-out preachers, and their families, is clearly a religious and charitable institution, and as such exempt from taxation under the Tennessee Constitution and statutes, and this exemption is hot defeated by the fact that the outfit of the publishing house maintained by that corporation is in part used for the publishing of secular works, while the proceeds therefrom are wholly devoted to the charitable purposes contemplated in the creation of the institution. ’ ’
In White v. Smith, 43 W. N. C. (Pa.), 342, which in effect, though not expressly, overruled Mullen v. Juenet, 6 Pa. Shper. Ct., 1, it was held:
“That property which is maintained by a Catholic.church, as a school of such a nature as to be a purely public charity within the meaning of the Pennsylvania Constitution and statutes, is exempt from taxation, although the legal title to the property is in an individual, the bishop, with no declared trust in him for a charitable use, and in consequence the charity may be terminated ait any time by the sale of the property, ’ ’
In Episcopal Academy v. Philadelphia, 150 Pa. St., 565, Mr. Justice Williams in delivering the opinion of the court said, page 573:
“It may be safely said that whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity. In every such case as *704 the public is the beneficiary, the charity is a public charity. As no private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the' public, it is a ‘purely public charity,’ the word ‘purely’ being equivalent to the word ‘wholly.’
“The fact that a school which is conducted as a charity is under the exclusive management and control of a particular religious denomination or sect will not deprive it of its exemption from taxation as a purely public charity if the general public is admitted, even though the members of the sect which. conducts the school are preferred.” 12 Am. & Eng. Enc. Law (2d Ed.), 342, and authorities there cited.
“An institution does not lose its charitable character and consequent exemption from taxation by reason of the fact that those recipients of its benefits who are able to pay are required to do. so, where no profit is made by the institution, and the amounts so received are applied in furthering its charitable purposes, and its benefits are refused to none on account of inability to pay therefor.” 12 Am. & Eng. Enc. Law (2d Ed.), 342.
“A charity, in the legal sense of the term, may be defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by. erecting and maintaining public buildings or works or otherwise lessening the burdens of the government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.” 5 Am. & Eng. Enc. Law (2d Ed.), 894.
In Gerke v. Purcell, 25 Ohio St., 229, one of the questions was, whether the parochial schools which were maintained by the Catholic church and to which the property was devoted, was a. charity which was purely public.
The- court says, page 244:
“It seems to us the charity is to be regarded as purely public. For the purpose of determining the public nature of the charity, it is not material through what particular forms the charity may be administered. If it is established and maintained for the use and benefit of the public, and so eon- *705 ducted that the public can make it available, this is all that is required.
1 ‘ But is it competent for the Legislature to treat the buildings and lands connected therewith, used for carrying on the schools, as institutions, or as property belonging to institutions! The term ‘institution’ is sometimes used as descriptive of the establishment or place where the business or operations of a society or association are carried on; at other times it is used to designate the organized body. It is used in both senses in the third section of the tax law brought under consideration in this case. It is used in the former sense in the first clause of the section, where it is declared that ‘ all lands connected with public .institutions of learning, not used with a view to profit, ’ shall be exempt from taxation. In the sixth clause of the section it is used in the latter sense, and the property referred to is described as belonging to the institutions named. * * *
“Laying out of view the nature of the organization by which the charity is administered, the property in question stands on the same footing as the property devoted to the support of colleges and other higher institutions of learning not founded by the state. All of these institutions stand, as respects their claim to exemption from taxation under the Constitution, on the ground of their being institutions of purely public charity. If property is appropriated to the support of a charity which is purely public, we see no good reasons why the Legislature may not exempt it from taxation, without reference to the manner in which the- legal title is held, and without regard to the form or character of the organization adopted to administer the charity.' To illustrate: If the organization by which these schools are maintained were incorporated, no question could be made as to the existence of authority to exempt their property from taxation. Now, if the property is appropriated to the same public uses, and the same ends are accomplished, we see no constitutional obstacle to prevent the Legislature from exempting it as fully without incorporation as with it.”
It made no difference in the above case that the Catholic church owned and operated the schools in question, and, notwithstanding its chief and primary object is teaching and extending its recognized form of religious belief and worship, yet its parochial schools were held exempt from taxation because they were institutions of purely public charity.
*706 Cleveland Library Assn. v. Pelton, 36 Ohio St., 253, is not decisive of the question here because the building of the association consisted of a large number of rooms, a small portion of which were in fact used for library purposes, while the others were rented out for business purposes. It was held that the institution embraces other objects and uses its buildings for other purposes, and with a view to profit, and to that extent it was not an institution of purely public charity.
A late decision of our Supreme Court seems to be decisive of the question under consideration. I refer to Davis v. Camp Meeting Assn., 57 Ohio St., 257. The plaintiff was a camp meeting association, incorporated, of the Methodist Episcopal Church. The action was to enjoin the defendant, as auditor, flrom assessing the lands of plaintiff for taxation. The court found that plaintiff was an institution of purely public charity, and not for profit, and was organized for the purpose of holding in trust for the use and benefit of the Methodist Episcopal Church such real estate and personal property as may be necessary and convenient fotr the holding, conducting, managing and carrying on of religious camp meetings, in strict accordance with the policy, established usage and discipline of the said Methodist Episcopal Church, and for the purpose of supporting and maintaining and managing, perpetually, public religious educational and other public charitable purposes as may be camp meetings, and such other public meetings for religious, approved by the board of trustees of said association; that the real estate of plaintiff was owned and held by it for the purposes aforesaid, and for more than six years the buildings and real estate had been actually occupied and used by plaint-' iff for said purpose and no other.
None of said real estate was leased by plaintiff, nor used with a view to profit at any time during the past six years. Plaintiff's said real estate consisted of twenty-five acres divided into twelve distinct tracts. It has six acres of drives and highways. One tract of one acre has a stable and small frame building thereon which is used as a grocery in which are kept for sale, during the meetings, such groceries and provisions as are necessary for the sustenance of the persons attending *707 said meetings; two lots have situated thereon a small' frame cottage occupied by the sexton of said camp grounds as a dwelling house; one lot has a nice house thereon in which ice is packed and furnished to persons attending at cost; another tract contains three aeres, and has a large frame building thereon, used during said meetings for sleeping apartments and as a boarding house by persons attending said meetings, for which a small charge-is made, but the receipts have not been sufficient to pay running expenses thereof; one tract of three acres is vacant ground, except it has thereon a pumping house and machinery which is connected with water pipes and used to pump water into tanks for the use of persons attending said camp meeting, for which, persons are required to pay, but no more in the aggregate than is sufficient to keep up repairs and operating expenses. The balance of the land has no buildings thereon and is entirely unimproved, and is used as camping ground and for hitching horses, and as places of rest and recreation by persons there attending.
The public at large are admitted to all said grounds upon equal terms without distinction or discrimination; sometimes an admission fee is charged for persons there attending for the purpose of helping to defray the expenses of conducting said meetings, and not with a view to profit; charges are also made by plaintiff for the privileges of keeping public stables on said grounds for the accommodation of persons there attending; also charges are made for privileges for keeping boarding and rooming houses on the grounds, and for keeping a grocery and for other privileges, but said charges are not made with a view to profit, but to assist in defraying the expenses of said meetings, and all have been insufficient to defray the necessary expenses incurred in conducting said méetings; that the same is largely supported by donations from charitable persons; that plaintiff is in debt nearly $7,000.
As a conclusion of law the circuit court held that plaintiff is entitled to hold its said real estate and property exempt from taxation under the laws of this state, and that plaintiff is entitled to the relief prayed for, and that it is the duty of said auditor, defendant, to refrain from assessing any taxes *708 against said property, and to proceed forthwith and correct the tax lists and duplicates by striking therefrom all sums and amounts now standing charged thereon as taxes against said real estate or any part thereof.
The Supreme Court, on review, found no error in the judgment of the circuit court, and held, page 269, that:
“By the sixth clause of Section 2732, Revised Statutes, ‘all buildings belonging to institutions of purely public charity, together with the lands actually occupied by such institutions, not leased or otherwise used with a view to profit,’ are exempt-from taxation. This exemption is authorized by the Constitution of the state. * - * * And though charges -are made for the use of certain privileges, these are not inconsistent with the finding that none of its property is leased or used with a view to profit. None of its lands, as shown by the finding, are used for any other purpose than to provide for the convenience and comfort of those who may attend the meeting; ■and these are not sufficient to meet the expenses of the association, and have to be met in part by donations from those interested in the maintenance of the meeting. So that the charges are not then made with a view to profit.”
The holding that an institution such as -a camp meeting is one of a purely public charity is entirely consistent with the broad definition of that term as repeatedly defined by the authorities, not only of this state, but elsewhere, as heretofore quoted in this opinion.
Our Supreme Court in Gerke v. Purcell, supra, page 243, quotes with approval 3 Stephenson’s Commentaries, 229, that—
“The meaning of the word ‘charity,’ in its legal sense, is different from the signification which it ordinarily bears. In its legal sense it includes not only gifts for the benefit of the poor, but endowments for the advancement of learning, or institutions for the encouragement of science and art, and, it is said, for any other useful and public purpose.”
Now, what are the facts in the case at bar? In the first place none of the houses used by the priests or bishop are rented and have not been at any time. No profit whatever is derived from them, and none is intended or has ever been attempted. It is true the priests of the parishes live in the priests’ houses, *709 and the sexton lives in the house on the corner of Lynn alley at the rear of the cathedral. But the evidence shows, in addition to other duties devolving on said sexton, that his presence there constantly is indispensable to the proper performance of his duties. Both the house on Lynn alley and the priests’ houses are constantly used for charitable purposes. A charitable association composed of the ladies of the church has its headquarters and holds its meetings in the Lynn alley house. Contributions for the poor are there received, and are there distributed to the poor indiscriminately, regardless of their religion or race. The presence of the sexton there is necessary as he is the custodian in charge placed there by the association for this purpose; he has other duties to perform, such as sexton for the cathedral, but that is not inconsistent with his duties as such custodian.
The priests’ houses are also used as places for the distribution of gifts to the worthy poor indiscriminately. Contributions are there received and dispensed, and this has long since been the case because of this system of charity being one of the missions and purposes of the church. The priests are in charge .of these houses and dispense these charities, and they could not well live elsewhere and properly perform these duties. In addition to this, the priest’s house is used as a place of instruction for converts and for children preparing for their first communion. He there maintains a place for inculcating habits of temperance, and there administers the total abstinence pledge; it is a place where family and neighborhood disputes are settled, and the priest is the arbitrator to settle and adjust such disputes and controversies. He is there not only to administer to the poor, but also to the sick at all hours of the day or night by all who may be sick and in distress. He goes whenever he is called, without regard to the religious belief of the sick or distressed, and all this is done free of charge.
In the light of Davis v. Camp Meeting Assn., supra, it certainly can not be successfully controverted, but that any institution which freely and indiscriminately administers such public charity, and derives no profit from its property, is an institu *710 tion of purely public charity. As heretofore quoted from Episcopal Academy v. Philadelphia, supra, the court says, page 573:
“It may be safely said that whatever is gratuitously done or-given in relief of the public burdens or for the advancement of the public good is a public charity. No private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the public. It is a ‘purely public charity.’ ”
For the above reasons I am of the opinion that the master erred in holding that said church is not an institution of purely public charity, so far as the evidence in this case shows as to the particular property in question.
Several other questions are presented by the record, all of which I have carefully examined, but I can not take the time or space to do more than refer to them and state' my conclusions.
As to the Catholic graveyard at Mt. Vernon and Washington ■avenues, I am of the opinion that the weight of authorities uphold the doctrine laid down in State v. Cemetery Assn., 11 Mo. App., 560, that the exemption continues until all the bodies are removed. If the place has become a public nuisance, ■as claimed by defendants, through neglect, then upon proper steps or proceedings it is the duty of those having proper public authority to abate it as such, and cause all the bodies to be removed. When that is done then this ground of exemption will be removed, but not so long as bodies are permitted to, or do remain buried therein.
The grounds contiguous to said churches, schools and priests’ houses, and which are used for necessary, or. for ornamental or recreation purposes1, for such houses are properly exempt from taxation. But this will not apply to vacant lots not used for any of the purposes for which the law exempts property from taxation.
I am inclined to the opinion that the finding and conclusion of the master, that so far as the property not exempt is concerned, simple taxes for each and every preceding year in which such property shall have escaped taxation, as far back as the next preceding decennial appraisement and equalization of real estate, should be added, is in accordance with a fair *711 construction of Revised Statutes, 2803, and that the auditor is required by the provisions of Revised Statutes, 2844, to add the penalties therein provided. I also concur in the master’s finding that the 5 per cent, penalty under Revised Statutes, 1094, is not properly chargeable.
I had intended to state explicitly the reasons for my conclusions concerning the issues, as to the special assessments for street improvements on which certain of the real estate in question abuts. But I can not take the time or space to do more than refer to the reasons stated by the master, in whose findings in that regard I concur, and hold that the assessments so charged upon the tax duplicate for said improvements were legally and validly levied.
Now coming to apply the findings and conclusions of the court on the several parcels of land described in the petition, I find as follows:
The first parcel consisting of lots 173, 174, 175, 176, 177 and 178 of Neil’s trustee’s second Neil Place addition, was purchased by plaintiff in 1890. It was not used for any purpose until April, 1893, and until that time it was all vacant property. The priest’s house was in April, 1893, completed, and was erected partly on lot 174 and partly on lot 175. Each of said lots is properly taxable for the years 1891 and 1892, together with the penalties provided in Revised Statutes, 2844. In April, 1893, the priest’s house and the land contiguous thereto, which I find is the east half of lot 174 and the west half of lot 175, I find became exempt from taxation. The remaining five lots, to-wit, 173, the west half of 174, the east half of 175, lots 176, 177 and 178, are properly taxable, with the penalty as aforesaid for the years of 1891, 1892, 1893, 1894 and 1895. In 1896, said church was completed on lot 173 and part of 174. I am of the opinion that since the completion of said church, and because of the uses and purposes for which the same and said priests’ houses are put, the remaining lots in said parcel are necessary for such uses and purposes, and since 1895 no part of said first parcel is properly taxable, and I find.that the same are exempt from taxation since said time.
Joseph Olds and L. G. Byrne, for plaintiff.
Dyer & Williams, for defendant.
The finding and conclusions of the master as to said first parcel are, therefore, modified to correspond with the above finding.
The properties described in the second, third, fourth, seventh, eighth, ninth, tenth, eleventh and twelfth parcels are, for the reasons in the opinion stated, properly exempt from taxation, and such as are charged on the tax duplicate are improperly charged thereon for taxes and penalty, and said treasurer is permanently enjoined from demanding or collecting from plaintiff taxes and penalties thereon, as well as> on said first parcel subject to said modification, and said auditor and treasurer are ordered and directed to correct their tax lists and duplicates by striking off therefrom the several amounts charged against said real estate.
The properties described in the fifth parcel, the sixth parcel and the thirteenth parcel, are each and all properly subject to taxation, and the taxes and penalty, except the five per cent, penalty, are properly charged on the tax duplicate against the property described in each of said parcels.
The special assessments for street improvements against plaintiff’s said property that abuts thereon, as found by the master, are properly assessed and are valid liens against said property, and defendants are entitled'to recover against plaintiff said several amounts, with interest, so specially assessed against said real estate for said street improvements.
A decree in accordance with the finding herein will be entered.